United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 14, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 24-33353** |
| **BARROW SHAVER RESOURCES** | § | |
| **COMPANY, LLC,** | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |
| | § | |
| **RAYMOND KASINO, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 25-3440** |
| | § | |
| **BARROW SHAVER RESOURCES** | § | |
| **COMPANY, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**SUPPLEMENTAL MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT (RELATES TO ECF NOS. 121, 130, 131, 132, & 133)**

On May 18, 2026, this Court issued a memorandum opinion (the "Opinion") granting in part and denying in part the cross-motions for summary judgment of Barrow Shaver Resources Company LLC (the "Debtor") and Raymond Kasino and LaWanda Turner (the "Plaintiffs"). This supplemental opinion is to be read in conjunction with the Opinion and aims to resolve the four reserved issues of (i) whether any exception to the statute of frauds applies to the alleged ORRIs; (ii) if so, whether any genuine issues of material fact exist with respect to the ORRIs; (iii) whether the Consultant death provision in the Consulting Agreements is ambiguous; and (iv) if so, what effect the parties' course of conduct in paying Mrs. Turner production revenues after the death of Mr. Turner has on enforcement of the Consultant death provision.

For the reasons stated below, the Court finds:

1. Alleged ORRIs on which the Debtor paid production revenues to the Plaintiffs and reported their ownership to taxing authorities prior to the Involuntary Petition Date (the "Paid ORRIs") are excepted from the statute of frauds under the doctrine of partial performance.

2. No alleged ORRI on which the Debtor never paid production revenues is excepted from the statute of frauds.

3. The Plaintiffs are entitled to enforcement of the conveyance of Paid ORRIs.

4. Whether a particular alleged ORRI is a Paid ORRI is a question of fact to be resolved under the procedure set out in the Conclusion.

5. The Consultant death provision does not divest ORRIs earned before a Consultant's death; it only prevents new ORRIs from accruing after death.

6. Because Mr. Turner retired before his death, his entitlement was fixed under the retirement provision, and all his interests pass to his estate. No ORRI accrues to his estate on a well that first produced after his death.

## BACKGROUND

The Court incorporates the background of the Opinion and restates only the facts relevant to the reserved issues.

On June 13, 2019, the Debtor entered into identical Consulting Agreements with Mr. Turner and Mr. Kasino, under which each agreed to "identify, generate, [and] evaluate" oil and gas Prospects for the Debtor.[1] The "Consultant Participation Program" described in the

[1] ECF No 110-13.

agreement provides that in exchange for the Plaintiffs' services, the Debtor will "set aside" for each consultant either:

> *A maximum [ORRI] not to exceed one percent (1%) of 8/8ths out of the overriding royalty interest which [the Debtor] earns or retains with respect to the Prospect, effective as of the time such ORRI is earned by [the Debtor], provided that, the lease burdens and deal terms allow for a 1% ORRI; or
>
> *If ORRI of least [*sic*] one percent (1%) is not available under deal terms, Consultant will earn 50% of whatever ORRI [the Debtor] earns or retains.[2]

The Consulting Agreement also provides that this compensation is "in addition to the salary or day rate Consultant receives as an employee or independent contractor," and the Consultant "shall continue to receive bonuses."[3] It further states that it "supersede[s] any prior oral or written agreements, or understandings between Barrow Shaver and Consultant with respect to such matters."[4] It also contains a provision that "record title to the underlying oil and gas properties…shall at all times remain in the name of [the Debtor], so long as [the Debtor] is the operator of the property" (the "Record Title Provision").[5]

The agreement also addresses what happens to a Consultant's interests when his relationship with the Debtor ends. "Upon the time of Consultant's retirement or other disassociation with [the Debtor], the earned producing ORRI will be assigned to Consultant on all owned and drilled wells in any Prospects during Consultant's tenure with [the Debtor]" (the "Retirement Provision").[6] The same provision continues: "As for any pending projects or well(s) at such time Consultant disassociates with Barrow Shaver will thereafter be assigned to

[2] ECF No. 110-13.
[3] ECF No. 110-13.
[4] ECF No. 110-13.
[5] ECF No. 110-13.
[6] ECF No. 110-13.

Consultant one-half of the percentage of ORRI otherwise payable during the time in which Consultant is in business relationship with Barrow Shaver."[7] The Consulting Agreement further provides that "[i]n the event of the death of the Consultant, no additional ORRI are payable, except for those interests that have already been assigned to Consultant of record, which therefore pass to the beneficiaries of the Estate of the Consultant, by Will or Texas state intestacy laws" (the "Death Provision").[8]

The Consultant Participation Program accounted for the greater part of the Plaintiffs' total compensation. Before joining the Debtor, the Plaintiffs each earned approximately $250,000 USD or more per year as geologists.[9] Under the Consulting Agreement, Mr. Kasino received a base salary of approximately $120,000.[10] Mr. Shaver testified that that the salary was meant to cover the Consultants' baseline expenses and that the ORRIs were intended to make up for the pay gap and fund his and Mr. Turner's retirements.[11] Mr. Kasino testified that he "took the position because [he] felt the risk of a lower salary would be compensated by the upside [he] could receive on overrides."[12]

When a Prospect came into production, the Consultant Participation Program operated through the Debtor's ordinary accounting and tax systems. Mr. Shaver decided how the overriding royalty for the Prospect would be allocated, while the head of the Debtor's land department prepared a spreadsheet of ownership interests that was entered into the Debtor's accounting system.[13] The accounting system generated monthly pay decks from which production revenues were paid to interest holders, including the Plaintiffs.[14] The spreadsheet was also sent to the Debtor's external property tax

[7] ECF No. 110-13.
[8] ECF No. 110-13.
[9] ECF No. 89-1 at 137–138.
[10] ECF No. 89-1 at 137-138.
[11] ECF No. 89-1 at 138:13–15.
[12] ECF No. 89-1 at 52:24–53:5.
[13] ECF No. 89-1 at 181–183.
[14] ECF No. 89-1 at 192:11–22.

consultant who reported each owner's interest in each Prospect to the county appraisal districts.[15] The counties then listed the payees, including the Plaintiffs, as the owners of their reported interests and assessed ad valorem taxes against each, which the Plaintiffs paid.[16] Third parties who were able to find the Plaintiffs' interests from the appraisal records sent unsolicited offers to purchase them.[17] In just the two years preceding the Involuntary Petition Date, the Debtor paid Mr. Kasino $963,705.47 and Mr. Turner and his estate $651,168.36 through this process "on account of their alleged ORRIs."[18]

Mr. Turner retired from his position with the Debtor in July 2023 and died on March 31, 2024.[19] The Debtor continued to pay production revenues to Mr. Turner after his retirement and to Mrs. Turner after his death.[20] According to the TRO hearing testimony, those payments were made at the full ORRI on wells that were producing when Mr. Turner retired and at one-half on wells that began producing afterward.[21] The Debtor suspended all payments for both Plaintiffs around July 2024 after the Involuntary Petition was filed.[22]

The Opinion directed the Parties to re-brief the reserved issues within 21 days, with responses due seven days later.[23] The reserved issues are ripe for decision.

## JURISDICTION & LEGAL STANDARD

28 U.S.C. § 1334(a) provides the District Courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11,

---

[15] ECF No. 89-1 at 129:11–130:12, 192:1-22.
[16] ECF No. 2-4; ECF No. 89-1 at 32:14–33:20, 70:4–71:8, 131:8–132:4.
[17] ECF No. 90-2, 90-3.
[18] ECF No. 121.
[19] ECF No. 89-1 at 21:6–10; ECF No. 1.
[20] ECF No. 130 ¶ 8; ECF No. 89-1.
[21] ECF No. 89-1 at 25:22–26:22, 59:20–60:3.
[22] ECF No. 121 at 6.
[23] ECF No. 121 at 48.

referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (H) and (K). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). And venue is proper under 28 U.S.C. §§ 1408 and 1409.

Under FED. R. CIV. P. 56, as incorporated into this adversary proceeding through FED. R. BANKR. P. 7056, a movant is entitled to summary judgment if it demonstrates to the Court "there is no genuine dispute as to any material fact and [the movant] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute pertaining to a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a disputed material fact precluding summary judgment, "courts consider the evidence in the light most favorable to the nonmovant[.]" *Spivey v. Robertson*, 197 F.3d 772, 774–75 (5th Cir. 1999) (citing Anderson, 477 U.S. at 248–49). However, the "nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Id.* "[U]nsubstantiated assertions are not competent summary judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322).

When invoking the statute of frauds, the party seeking to enforce the contract bears the burden of proving an exception. *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.,* 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Whether an exception applies is

"generally a question of fact," *Hairston v. S. Methodist Univ.*, 441 S.W.3d 327, 334 (Tex. App.—Dallas 2013, pet. denied), but where the underlying facts are undisputed and the parties differ only as to their legal effect, the question may be resolved on summary judgment. See *Craig v. B. Riley FBR, Inc.*, No. 3:19-CV-0058-G, 2020 WL 6889018, at *13-14 (N.D. Tex. Nov. 23, 2020). A party asserting that a fact is genuinely disputed must "cit[e] to particular parts of materials in the record"; conclusory assertions that fact issues exist do not suffice. FED. R. CIV. P. 56(c)(1)(A); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

Whether a contract is ambiguous is a question of law. *Coker v. Coker*, 650 S.W.2d 391, 393-94 (Tex. 1983). A contract is ambiguous only if, after the rules of construction are applied, it remains reasonably susceptible to more than one meaning; the parties' disagreement does not make it so. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). If a contract is ambiguous, extrinsic evidence, including the parties' course of performance, is admissible to determine its meaning, *Nat'l Union Fire Ins. Co of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520–21 (Tex. 1995), and where that evidence is undisputed the question may still be resolved on summary judgment.

The nature of a debtor's interest in property is determined by state law, *Butner v. United States*, 440 U.S. 48, 54 (1979); *In re T.S.C. Seiber Servs.*, L.C., 771 F.3d 246, 250 (5th Cir. 2014), and the estate takes that interest subject to the same limitations that bound the debtor. 11 U.S.C. § 541(d).

## DISCUSSION

The reserved issues fall into two groups, and the Court resolves them as follows. The first is (i) whether any of the Plaintiffs' alleged ORRIs are excepted from the statute of frauds, and if so, what are they entitled to on account of them. The second is (ii) the meaning of the Consultant death provision and its effect on the claimed interests of Mr.

Turner's estate. The remaining claims under this adversary proceeding, which neither Party has briefed, are reserved. For the reasons stated below, the Parties' motions for summary judgment are granted in part and denied in part.

## I. PAID ORRIS ARE EXCEPTED FROM THE STATUTE OF FRAUDS.

In its Opinion issued on May 18, 2026, this Court found that every element of a valid conveyance of the ORRIs under Texas law was met but one. The Consulting Agreement is in writing, identifies the grantor and grantee, contains present words of grant, and was signed, delivered, and accepted.[24] However, it lacks a sufficient description of the property to be conveyed, failing the statute of frauds.[25] The Court further held that to the extent any ORRI was conveyed, the Plaintiffs hold an equitable interest in it that is excluded from the Debtor's estate, and that the Debtor cannot avoid this conveyance under § 544(a) or § 548.[26] The remaining question is whether the description defect is excused as to any of the alleged ORRIs.

The Court finds that the defect is excused as to the Paid ORRIs. The doctrine of partial performance excepts those interests from the statute because the absence of formal possession does not defeat the exception for an interest that is non-possessory by nature, the Plaintiff's performance is unequivocally referable to the Consulting Agreement, and because denying enforcement would amount to a virtual fraud.

The exception entitles the Plaintiffs to the interests themselves rather than to reliance damages, because the Consulting Agreement effected a present conveyance and because state law, not bankruptcy policy, defines what the Plaintiffs own. The Plaintiffs' alternative theories do not change that result, and the only genuine issue of material fact that remains is which alleged interests qualify as Paid ORRIs.

[24] ECF No. 121 at 12, 24.
[25] ECF No. 121 at 14–17.
[26] ECF No. 121 at 35,42,47.

### A. Partial Performance Excepts Paid ORRIs.

This Court reserved judgment only as to interests the Debtor made payments on and reported (the "Paid ORRIs"), holding that only these interests are candidates for an exception. The Court's prior ruling on interests supported only by internal documents stands, and interests on which no payments were made remain barred.

The Debtor argues that the partial performance test under *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114 (1921) is controlling. The Court does not agree. Applying *Hooks* to the facts of this case would be improper because the Consulting Agreement is a signed instrument that is deficient only in its description of property, not merely an oral agreement for the sale of land. The applicable elements of partial performance under Texas law, unequivocally referable performance and virtual fraud, are met. The Plaintiffs' acceptance of below market compensation, execution of division orders and payment of ad valorem taxes on the interests can only be explained as incidents of ownership. The Debtor's own payments and tax reporting further confirm that they were referable to the Consulting Agreement alone. Because the Plaintiffs gave up substantial compensation in reliance of the Consulting Agreement, the estate would otherwise keep both the Prospects and the ORRIs, and an unsecured claim is not a substitute for a paying royalty interest, virtual fraud is also satisfied.

#### *(1) Only Paid ORRIs Are Candidates for the Exception.*

The Opinion granted summary judgment to the Debtor on two categories of alleged ORRIs: those identifiable only through reference to the Division Orders or Division of Interest Listings, and those whose evidentiary support is solely a line ledger entry.[27] It reserved judgment as to ORRIs that may be excepted from the requirements of the statute of frauds by virtue of the Debtor having paid the Plaintiffs on account of those interests, as evidenced by various property tax records.[28] The

[27] ECF No. 121 at 17.

[28] ECF No. 121 at 17 n.72.

Plaintiffs' brief nonetheless asks the Court to grant summary judgment on all three categories.[29] As to the first two, that request is effectively a motion for reconsideration. However, the Plaintiffs identify no new evidence, no intervening change in the law, and no error in the Court's application of *Morrow v. Shotwell*, 477 S.W.2d 538, 540–41 (Tex. 1972). Therefore, it is denied.[30]

However, the operative distinction is not the internal document in which an alleged ORRI happens to appear. It is whether the Debtor paid production revenues on the interest and reported the Plaintiff's ownership of it to the county taxing authorities before the Involuntary Petition Date. An interest that appears in a Division of Interest Listing and was also paid and reported falls within the reserved category. The Court will refer to ORRIs meeting both conditions as "Paid ORRIs."

At the other end are interests in Prospects that were never drilled, or in wells that never produced. No production revenue was paid on account of those interests, no ownership was reported, and no taxes were assessed. The only evidence of their conveyance is the Consulting Agreement itself, which the Court has held is deficient, and there is no performance by either Party to which any exception could attach. The Plaintiffs contend that a Consultant fully performed each time he tendered a Prospect, regardless of whether it was ever drilled.[31] Even accepting that premise, this does not give rise to an identifiable interest. The Consulting Agreement sets aside "up to 1%" out of whatever ORRI the Debtor retains in a Prospect, which is a quantity that cannot be

---

[29] ECF No. 131 at 19.

[30] The Plaintiffs rely on *Anderson Energy Corp. v. Dominion Okla. Tex. Expl. & Prod., Inc.*, 469 S.W.3d 280, 295–96 (Tex. App.—San Antonio 2015, no pet.), Gates v. Asher, 280 S.W.2d 247, 248 (Tex. 1955), and *Thagard Mining P'ship, LP v. Cass*, 726 S.W.3d 871, 882 (Tex. App.—Eastland 2025, pet. denied) for the proposition that a property description may be aided by extrinsic documents. Each of those cases permits extrinsic evidence only where the instrument itself contains a "nucleus" of description to which the evidence can be applied. The Opinion held that the Consulting Agreement contains no such nucleus. Therefore, those authorities do not call the Court's prior ruling into question.

[31] ECF No. 131 at 12–13.

determined until the Prospect is leased, drilled, and begins producing. For these Prospects, nothing was ever allocated, set aside, paid, or reported.[32] An exception to the statute of frauds can excuse the absence of a description of an interest that exists, but it cannot supply an interest that never came into being. Therefore, summary judgment on the conveyance of those interests is granted for the Debtor and denied for the Plaintiffs.

***(2) The Hooks Possession Test Does Not Apply.***

Under Texas law, partial performance requires the satisfaction of two elements. First, the performance must be "unequivocally referable to the agreement[.]" *Wiley v. Bertelsen,* 770 S.W.2d 878, 882 (Tex. App.–Texarkana 1989, no writ). To be unequivocally referable to an agreement, the performance must be "unintelligible," or at least "extraordinary" when considered on its own, "without the aid of words of promise." *Nat'l Prop. Holdings, L.P.* v. Westergren, 453 S.W.3d 419, 427 (Tex. 2015) (citation omitted); see *Chevalier v. Lane's, Inc.*, 213 S.W.2d 530, 533-34 (Tex. 1948). In other words, "the purpose of the. . . performance must be to fulfill a specific agreement." *Id.* Second, denial of enforcement must amount to "a virtual fraud." *Carmack v. Beltway Dev. Co.*, 701 S.W.2d. 37, 41 (Tex. App.—Dallas 1985, no writ). To satisfy virtual fraud, the party relying on the contract must show that it has suffered a substantial detriment for which it has no adequate remedy, and that the other party, if permitted to plead the statute, would reap an unearned benefit. *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied); *Carmack*, 701 S.W.2d at 40.

The Debtor argues that a stricter test applies. Relying on *Hooks* and its progeny, the Debtor contends that a party seeking to enforce conveyance of real property must show payment of consideration, surrender of possession, permanent and valuable improvements to the property (or facts making the transaction fraudulent if not enforced),

---

[32] ECF No. 110-13.

and that the possession must be "indispensable."[33] Crucially, the Debtor also concedes that the Consulting Agreement is a "hybrid instrument — part geological services contract, part alleged conveyance — so the governing partial performance standard is unclear."[34]

The Court does not agree that *Hooks* applies to the facts of this case. *Hooks*, and cases that apply it, involve wholly oral contracts for the sale of land in which every term of the agreement, including the parties, consideration, and land itself, must be proven by conduct rather than by writing. In these factual settings, possession and improvements serve both an evidentiary and reliance function in the sense that the vendee's occupation of a particular tract is what identifies the land that the oral agreement contemplated. This case is different. The Consulting Agreement is a signed writing that satisfies every requirement of a conveyance except description. The grantor, grantee, words of grant, and consideration are all established by the instrument itself. The only element left to parol is the identification of the specific leases in which the "set aside" interests lie. The narrower question presented is whether the Parties' performance corroborates that identification with the certainty equity requires. That is the question the traditional partial performance test asks, and it is the test the Court applied when it reserved this issue.[35]

Therefore, the Debtor's possession argument does not define the inquiry. However, because the Debtor presses the issue as dispositive, and because the Court's answer to it bears on the referability analysis that follows, the Court addresses it before turning to the elements of the controlling test.

---

[33] ECF No. 130 ¶¶ 22–23 (citing *Hooks*, 229 S.W. at 1116; *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 882–83 (Tex. App.–Houston [1 st Dist.] 2011, pet. denied)).
[34] ECF No. 130 ¶ 21.
[35] ECF No. 121 at 18 (citing *Carmack*).

### *(3) Possession Is Not Required to Enforce a Non-Possessory Interest.*

Even if *Hooks* was controlling here, its possession element would not defeat the exception. The Debtor asserts that the Plaintiffs never took possession of the ORRIs, which it claims is fatal under *Swinehart* and *Carpenter*.[36] The Debtor further claims that the Court "has already found" that the Debtor "retained possession of the alleged ORRIs."[37] The Court made no such finding.

The Opinion held that the Debtor retained legal title to the ORRIs, pending a sale of the underlying property or the Consultant's dissociation.[38] Legal title and possession are separate constructs, and the Opinion held in the same passage that the Plaintiffs hold equitable rights to receive ORRI payments, the right to acquire legal title pending the sale of the underlying property, and the right to assign those interests to a third party.[39]

More fundamentally, an overriding royalty is a non-possessory interest. It carries no right to occupy the land, drill, operate, or produce. It is a right to a share of production, free of the costs associated with this production. *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284,291 (Tex. App.—Austin 1983, writ ref'd n.r.e.); *Standard Oil Co. of Tex. v. Marshall*, 265 F.2d 46, 54 (5th Cir. 1959); 2 WILLIAMS & MEYERS, OIL AND GAS LAW § 418.1. The Consulting Agreement further provides that record title "shall at all times remain in the name of [the Debtor], so long as [the Debtor] is the operator of the property."[40] The Debtor is effectively asking the Court to deny enforcement because the Plaintiffs failed to take a form of possession that interests of this kind do not permit, and that the Parties' agreement did not contemplate.

---

[36] ECF No. 130 ¶¶ 2,14, 20–23.
[37] ECF No. 130 ¶ 2.
[38] ECF No. 121 at 31–33.
[39] ECF No. 121 at 34.
[40] ECF No. 110–13.

To the extent the *Hooks* line of cases requires something in the nature of possession, the equivalent for an interest of this kind is present nonetheless. The Plaintiffs received the production stream attributable to the interests for years. They were assessed and the associated ad valorem taxes were paid. The Plaintiffs were recognized as the owners by the county appraisal districts as well as third parties who sought to purchase these interests.[41] These incidents of ownership represent the furthest extent of possession that one could assert for an interest of this kind.

Lastly, *Swinehart* and *In re Haber Oil Co.*, 12 F.3d 426 (5th Cir. 1994) are not instructive here. Both concerned an alleged oral agreement to assign working interests that no signed instrument accounted for. The geologist in these cases sought to supply the agreement's terms from leases, investor materials, and operating documents created afterward, and the court held that such documents could not furnish the "framework or skeleton" of the agreement. *Swinehart*, 48 S.W.3d at 875, 877-78; *Haber Oil*, 12 F.3d at 430–31. Regardless of what "possession" of such an interest might have entailed, the geologist in those cases had no signed instrument, no present words of grant, and no adjudication that the operator's own records and tax filings identified his interests. Furthermore, the Fifth Circuit's decision in *Haber Oil* turned on the trustee's status as a bona fide purchaser under § 544(a)(3) and on the tracing requirements for a constructive trust, both of which are issues that this Court has already resolved in the Plaintiffs' favor.[42] *Carpenter* similarly involved an alleged oral agreement to assign a working interest and would also be improperly applied to the facts of this case.

With the issue of possession resolved, the Court turns to the two requirements of the governing partial performance test.

---

[41] ECF No. 90-2,3.
[42] ECF No. 121 at 30–35, 36–42.

### *(4) Plaintiffs' Performance is Unequivocally Referable to the Consulting Agreement.*

The Debtor's principal argument is that the Plaintiffs' performance cannot be unequivocally referable to the Consulting Agreement because the Plaintiffs were salaried geologists whose everyday work of generating and evaluating Prospects is fully explained by their employment.[43] The Court disagrees.

The Debtor relies on a line of Texas cases which held that services compensated by a salary do not constitute partial performance associated with a separate promise for additional compensation. "[A] salary compensates for services rendered; if a person receives payment for his services, those services will not act as an exception to the statute of frauds." *Holloway v. Dekkers,* 380 S.W.3d 315, 324 (Tex. App.—Dallas 2012, no pet.) (citation omitted); see also *Wiley,* 770 S.W.2d at 882; *Biko v. Siemens Corp.*, 246 S.W.3d 148, 161 (Tex. App.—Dallas 2007, pet. denied); *Timmons v. Scarbrough, Medlin & Assocs., Inc.,* No. 05-05-00235-CV, 2005 WL 3436706, at *4–5 (Tex. App.—Dallas Dec. 15, 2005, no pet.); *Daesang Corp. v. Stone*, No. 05-95-01760-CV, 1997 WL 557091, at *4 (Tex. App.—Dallas Sept. 9, 1997, pet. denied); *Martinez v. DKTA Enters.*, Ltd., No. 07-19-00116-CV, 2020 WL 2786942, at *9–11 (Tex. App.—Amarillo May 29, 2020, no pet.); *Fuller v. Wholesale Elec. Supply Co. of Hous., Inc.*, 631 S.W.3d 177, 185-86 (Tex. App.—Houston [14 th Dist.] 2020, pet. denied); *Exxon*, 82 S.W.3d at 440–41.

Those cases do not control here for three reasons. First, each of the cases above involved an oral or unexecuted promise of additional compensation, the very existence of which was disputed. Salary was the only consideration established by the records, allowing the "unequivocally referable" element to serve its intended function of preventing a party from fraudulently manufacturing a promise for additional compensation from conduct that was equally consistent with ordinary employment. Here, the Consulting Agreement is signed and in

[43] ECF No. 130 ¶¶ 24–30.

writing, and its existence and purpose are undisputed. The Consulting Agreement explicitly states that payments on account of the ORRIs are "in addition to the salary or day rate," and that it supersedes any prior understanding "with respect to such matters."[44] The Debtor also does not identify any other agreement under which ORRIs could have been owed to the Consultants. There is no question here as to whether performance can prove the existence of a contract, which is what the cases listed above ask. The contract here is on the record. The proper question to ask here would be whether performance can be sufficient to identify property, which is something that is not addressed by any of the above cases.

Second, even on their own terms, those cases bar the exception only where the salary fully compensates the services. *Daesang*, 1997 WL 557091, at *4. The Court has already found the opposite to be true in this case. The Plaintiffs each agreed to a significantly reduced salary in exchange for the potential upside of acquiring ORRIs for the Prospects they helped develop.[45] Mr. Shaver testified that the salary was meant to cover baseline expenses.[46] In the words of Mr. Kasino, the salary provided "grocery money."[47] More importantly, when Mr. Shaver was questioned on if he "consider[ed] just paying [the Plaintiffs] a straight salary," he explicitly responded "No . . . The overrides are what give them the incentive to really come up with good prospects and work as hard as they can for their retirement."[48] Where the undisputed evidence shows that equity as opposed to salary was the consideration that induced the work, the work is referable to the equity agreement. *Davis v. Insurtek, Inc.*, No. 05-09-01029-CV, 2010 WL 5395668, at *3-4 (Tex. App.—Dallas Dec. 30, 2010, no pet.).

Third, the Plaintiffs' performance goes beyond just developing the Prospects. The record shows specific instances of conduct performed by

---

[44] ECF No. 110–13.
[45] ECF No. 121 at 47.
[46] ECF No. 110–4 at 89:6–13.
[47] ECF No. 110-19 at 14:2-8.
[48] ECF No. 89-1 at 138:13–15.

the Plaintiffs that cannot be explained by their employment at all. For example, the Plaintiffs accepted compensation that was significantly less than the fair value of their services throughout the life of the Consultant Participation Program.[49] The only intelligible explanation for this kind of forbearance is that the Plaintiffs accepted a reduced salary as the price to participate in the ORRI program. The program, by its terms, "supersede[s] any prior oral or written agreements, or understanding . . . with respect to such matters."[50]

They also executed Division Orders certifying ownership of their interests in identified leases and paid ad valorem taxes assessed to them on these interests.[51] The Debtor contends that the tax payments were merely "legal obligation[s] tied to income received."[52] This is a fundamental misunderstanding of how mineral interests are taxed in Texas. Under the Texas Tax Code, each separate interest in minerals is listed in the name of its owner, and the resulting ad valorem tax is assessed based on the appraised market value of the interest. The market value of the interest is determined based on projections of future income the interest itself will yield. It is not based on the income the owner happened to receive. TEX. TAX CODE §§ 25.12(a), 23.175. The Plaintiffs were assessed and paid those taxes because the Debtor reported them to the counties as the owners of the interests, and the counties listed them as such.[53] Paying property tax on an interest "alone and without the aid of words of promise is unintelligible…unless as an incident of ownership." *Westergren*, 453 S.W.3d at 427. A salaried employee does not pay the property taxes on his employer's royalty.

The Debtor's own conduct supports this point. The Debtor concedes that it paid the Plaintiffs a combined total of approximately $1.6 million in production revenues "on account of their alleged ORRIs" during the two year lookback period alone, and that it did so through

---

[49] ECF No. 89-1 at 137:14–138:11, 52:24–53:5.
[50] ECF. No. 110-13.
[51] ECF No. 2-4; ECF No. 89-1 at 33:1–11, 70:15–19; ECF No. 110-19 at 32:14–33:20.
[52] ECF No. 130 ¶ 31.
[53] ECF No. 89-1 at 129:11–130:12, 131:8–132:4.

pay decks allocating a stated percentage of production from a stated well to each Consultant.[54] It concedes that it reported those same interests on a well by well basis to the county appraisal districts.[55] The Debtor also concedes that it continued paying Mrs. Turner, who was never the Debtor's employee, after her husband's death.[56] The Debtor is correct that the partial performance doctrine focuses on the enforcing party's performance. *Tex. Co. v. Burkett*, 296 S.W. 273, 279 (Tex. 1927). However, the opposing party's performance is competent evidence of what the enforcing party's performance was referable to, and Texas and Fifth Circuit courts have both treated opposing parties' payments as exactly that. *Smith v. Smith*, 541 S.W.3d 251, 262 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (employer's payment of commissions was evidence of partial performance of oral commission agreement)[57]; *Chase v. Hodge*, 95 F.4th 223, 230 (5th Cir. 2024) (question of whether "payments to [enforcing party] could not have been made except as a share of profits"). There is "no other design" that the debtor's payments and tax reporting could have been made for than to perform the Consulting Agreement. *Chevalier*, 213 S.W.2d at 534.

Therefore, the Court finds that the Plaintiffs' performance is unequivocally referable to the Consulting Agreement.

[54] ECF No. 89-1 at 181:11–182:18, 192:11–22.

[55] ECF No. 110-13.

[56] ECF No. 130 ¶ 8.

[57] The Debtor distinguishes *Smith* on the grounds that the employee's performance was tied solely to the oral commission agreement with no discussion of salary, and it observes that *Duradril*'s reference to performance by "either party" arose on a jury-charge complaint that was not preserved. Neither point affects the use the Court makes of these cases. The Court does not hold that the Debtor's performance substitutes for the Plaintiffs'. It holds that the Debtor's payments and tax reporting are evidence of what the Plaintiffs' own performance was referable to, and *Smith* treated an employer's payments in as exactly that kind of evidence. 541 S.W.3d at 262.

### *(5) Denial of Enforcement Would Amount to Virtual Fraud.*

To prove a virtual fraud under Texas law, three elements must be satisfied. There must be a showing of (i) substantial detriment to the party relying on the contract (ii) for which there is no adequate remedy, and (iii) an unearned benefit to the opposing party if permitted to plead the statute. *Carmack*, 701 S.W.2d at 40. Each element is established through the record.

The Plaintiffs gave up the difference between their market rate and their salary for the duration of their tenure in reliance of the ORRI program. Mr. Shaver intended this reliance, as shown through his testimony that the overrides were meant to fund the Plaintiffs' retirements and that he made sure any deal included ORRIs for them.[58] The Debtor's contention that the Plaintiffs suffered no detriment because they "were paid millions of dollars through salary, bonuses, and production related compensation" conflates the consideration the Plaintiffs received with the consideration they gave up, and is contrary to this Court's prior finding.[59] Therefore, the Court finds that the element of substantial detriment is met.

If the statute is enforced, the Debtor's estate would retain the Prospects that the Plaintiffs were instrumental in developing. These are the same Prospects that Mr. Shaver admits he "wouldn't be here right now" without.[60] The estate would also retain the ORRIs the Debtor explicitly agreed to set aside for the Plaintiffs, and on which it issued payments on account of for years. The Court has already found that the Plaintiffs' services were reasonably equivalent in value to the ORRIs. The Debtor would necessarily be reaping an unearned benefit if it were to keep both the services provided by the Plaintiffs and the ORRIs.

---

[58] ECF No. 89-1 at 138:9–15; ECF No. 110-4 at 97:16–98:16.
[59] ECF No. 130 ¶ 3.
[60] ECF No. 110-4 at 120:11–15.

The Debtor argues that the Plaintiffs have an adequate remedy because even if the statute is enforced, they filed proofs of claim and can proceed through the claims allowance process.[61] The Court does not find this argument persuasive. An overriding royalty is an interest in real property, and Texas law treats interests in real property as unique. The ordinary remedy for a completed conveyance of real property is the property itself, not its price. *Kress v. Soules*, 261 S.W.2d 703, 704 (Tex. 1953); *Scott v. Sebree*, 986 S.W.2d 364, 370 (Tex. App.—Austin 1999, pet. denied) (specific performance is "more readily available as a remedy for the sale of real estate" because "damages are generally believed to be inadequate in connection with real property"). A general unsecured claim in a chapter 11 case in which the Debtor has sold substantially all of its oil and gas properties and has filed a plan of liquidation is not an adequate substitute for a producing royalty interest that the Debtor itself treated as the Plaintiffs' property for years. As such, the Court finds that denying enforcement of the conveyance of the Paid ORRIs would amount to a virtual fraud against the Plaintiffs.

For all the reasons stated above, summary judgment on the application of the partial performance exception to the Paid ORRIs is granted for the Plaintiffs and denied for the Debtor.

### B. The Exception Entitles Plaintiffs to Conveyance.

The Debtor asserts that even if an exception applies, the Plaintiffs should receive something less than the interests themselves. It argues that a partial performance exception to the statute of frauds only provides for reliance damages, and that the policies underlying the Bankruptcy Code require such an exception to be narrowed or withheld entirely in the case of the Plaintiffs. Neither argument succeeds.

The Debtor's argument that partial performance only yields reliance damages fails because the cases it relies on concern executory contracts, whereas this Court has already held that the Consulting Agreement effected a present conveyance. Once the statute's bar is

[61] ECF No. 130 ¶ 35.

removed, there is nothing left to compel and nothing to measure in damages. The exception entitles the Plaintiffs to the interests themselves.

Its argument that bankruptcy policy requires the exception to be narrowed fails because state law defines the Plaintiffs' interests, and the Court has already held that those interests are not property of the Debtor's estate. The principle of equal distribution only governs property that belongs to Debtor's estate.

***(1) Plaintiffs Are Not Limited to Reliance Damages.***

The Debtors argue that even if the partial performance exception applies, the Plaintiffs' only available remedy is reliance damages, which would leave them with a prepetition general unsecured claim.[62] It relies on *Exxon*, 82 S.W.3d at 440–41; *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010); *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965); *Fretz Constr. Co. v. S. Nat'l Bank*, 626 S.W.2d 478, 483 (Tex. 1981); and *Burkett*, 117 Tex. at 33.

Those cases address a different situation. *Wheeler* and *Fretz* are promissory estoppel cases, and the limitation of that doctrine to reliance damages reflects its core purpose, which is to make whole a promisee who changed their position in reliance of a promise that was never performed. *Exxon* and *Sullivan* likewise involved executory promises that the promisor did not fulfill. *Exxon* concerned an alleged oral undertaking to convey a working interest in the future, and Sullivan dealt with an alleged oral promise of a bonus. In both cases, the promisee sought expectation damages for a promise the statute made unenforceable, and the court held that equity would go no further than reliance. The passage from *Burkett* on which the Debtor relies, that "the taking possession and making valuable improvements by the vendee will as a general rule entitle him to a decree of specific performance" (quoting 117 Tex. at 33), describes when a vendee under an oral executory contract for the sale of land may obtain a decree compelling

[62] ECF No. 130.

his vendor to convey. It does not speak to an instrument that has been held to have effected a present conveyance.

Here, there is no executory promise, nor is the contract oral. The Court has held that the Consulting Agreement contains present words of grant and effected a present conveyance of each ORRI as it was earned, and that the Plaintiffs therefore held the equitable interest in that ORRI while the Debtor retained bare legal title. The statute of frauds did not render that conveyance void; it rendered it unenforceable. TEX. BUS. & COM. CODE § 26.01(a). Applying the partial performance exception removes the statute of frauds bar, leaving nothing left for the Court to compel or to measure in damages. Because the statute of frauds bar is lifted, each interest passed when it was earned, and the Plaintiffs are its equitable owners. They are entitled to a declaration to that effect, which is the relief the Complaint seeks.[63] The Plaintiffs also ask that the Debtor be required to execute the assignments of legal title where the Consulting Agreement calls for them, which is upon a Consultant's retirement or other disassociation, and upon a sale of the underlying property.[64] That relief, when it becomes due, constitutes the completion of a conveyance already made, not the enforcement of an executory promise, and it is relief that Texas courts routinely grant for interests in land. *Kress*, 261 S.W.2d at 704.

***(2) Bankruptcy Policy Considerations Do Not Narrow the Exception.***

The Debtor also urges the Court to decline to apply, or to apply narrowly, any equitable exception to the statute of frauds in light of the Bankruptcy Code's policy of equal distribution among creditors, the statutory liens asserted by the service creditors who commenced this case, and the sophistication of the Plaintiffs.[65] The Debtor's arguments misapprehend what is at stake.

[63] ECF No. 1.
[64] ECF No. 133 at 11.
[65] ECF No. 130 ¶¶ 5, 48–53; ECF No. 132 ¶¶ 29–32.

The Plaintiffs' interests in the ORRIs are defined by Texas law, not the Bankruptcy Code. *Butner*, 440 U.S. at 54. The Court has also already held that those interests are excluded from the estate under § 541(d) and are not avoidable under § 544(a) or § 548. Though the Debtor relies on *Begier v. IRS*, 496 U.S. 53, 58 (1990), and *In re Greystone III Joint Venture*, 995 F.2d 1274, 1277 (5th Cir. 1991), they concern different issues. Both *Begier* and *Greystone* involved disputes over property which was already deemed to be property of the estate. Neither case raised the question of whether the property belonged to the estate to begin with. That question is primarily answered by state law, and the estate takes the Debtor's interest subject to every limitation that the debtor is bound by. 11 U.S.C. § 541(d); H.R. Rep. No. 95-595, at 367-68 (1977). Granting the Debtor's request would mean applying Texas law differently because the Debtor is in bankruptcy, which *Butner* forbids.

The Plaintiffs' sophistication as to business transactions does not change the analysis. The Debtor relies on *In re Jones*, 77 B.R. 541, 550-51 (Bankr. N.D. Tex. 1987) for its premise that "[w]henever one entering into a business transaction fails to take the proper steps to protect his interest…that person must bear the result of his failure."[66] The Debtor drafted the Consulting Agreement, chose the "set aside" mechanism, retained record title by its own terms, and controlled whether and when formal assignments would be executed. Between a party that could have documented its own performance and a party that performed in reliance on that party's promise to do so, the consequences of the deficient drafting fall on the former.

### C. The Plaintiffs' Alternative Theories Do Not Change the Result.

The Plaintiffs contend that the Debtor ratified the conveyances by issuing Division Orders and Division of Interest Listings, and that the doctrine of full performance independently removes the Consulting

---

[66] ECF No. 132 at 21.

Agreement from the statute.[67] Neither contention affects the result reached above.

Ratification does not apply here. The Debtor objects with respect to the fact that ratification was not raised in the Plaintiffs' original motion or within the scope of the briefing that the Court requested. The Court need not resolve that objection, because the theory fails on the merits. A defective conveyance of an interest in land may be ratified only by a subsequent written instrument, executed by the grantor, that itself satisfies the statute of frauds and formally recognizes the earlier conveyance. *Kunkel v. Kunkel*, 515 S.W.2d 941, 948 (Tex. Civ. App.—Amarillo 1974, writ ref'd n.r.e) (deed lacking one grantor's signature ratified by that grantor's later recorded release of vendor's lien); *MEI Camp Springs, LLC v. Clear Fork, Inc.*, 623 S.W.3d 83, 92–96 (Tex. App.—Eastland 2021, no pet.) (recorded memorandum of lease and amendments cured missing description). The Division Orders are signed by the Plaintiffs, not the Debtor. They are not instruments of conveyance. At most, they ratify the payments under an existing lease. *City Nat'l Bank v. Bradshaw*, 433 S.W.2d 955, 958 (Tex. Civ. App.—Fort Worth 1968, no writ); *see* TEX. NAT. RES. CODE § 91.402. The Division of Interest Listings are unsigned internal records. The Court has already held that neither document can supply the description the Consulting Agreement lacks, and the Plaintiffs cannot accomplish under a label of ratification what *Morrow* forbids under the statute itself. Therefore, summary judgment as to the issue of ratification is granted for the Debtor.

Because the Court holds that partial performance excepts the Paid ORRIs, it need not decide on whether the doctrine of full performance would independently do so. As to interests on which nothing was ever paid, full performance fails for the reason stated in Part I.A.1 of this opinion. The Plaintiffs did not brief promissory

---

[67] ECF No. 131 at 12–16.

estoppel, equitable estoppel, or judicial admission, so the Court does not reach those exceptions.

### D. The Only Genuine Issue of Material Fact Is Which Interests are Paid ORRIs.

The Debtor contends that whether any exception applies is a fact intensive question that cannot be resolved on summary judgment.[68] The Court agrees that the exception must be applied on a per interest basis, and that whether an exception applies is ordinarily a question of fact. *Hairston*, 441 S.W.3d at 334. But a question of fact precludes summary judgment only if it is genuine and the party asserting the genuine dispute cites to the specific portions of the record that create it. FED. R. CIV. P. 56(c)(1)(A); *Ragas*, 136 F.3d at 458. The Debtor cites no such genuine dispute. The facts on which the Court's holdings rest — the terms of the Consulting Agreement, the Plaintiffs' reduced compensation, the Debtor's payments, its tax reporting, the assessment and payment of taxes, and the third party offers — all come from the Debtor's own instrument, records, pleadings, and witnesses. The Debtor does not dispute these facts. Rather, it disputes their legal effect, which is a question of law.

What the record does not yet establish is a complete list of interests that qualify as Paid ORRIs. The tax records in the summary judgment record are samples, and the Court declines to construct a well-by-well schedule from the pay decks and Division of Interest Listings. The Court reserves the issue of identification of the Paid ORRIs and will resolve it under the procedure set forth in the Conclusion.

## II. THE DEATH PROVISION DOES NOT DIVEST EARNED ORRIS.

The Opinion asked whether the Death Provision is ambiguous as applied to Mr. Turner and, if so, what effect the Debtor's continued payments to Mrs. Turner have on its enforcement.[69] Both parties answer that the provision is unambiguous but propose very different

[68] ECF No. 130 ¶¶ 46–47; ECF No. 132 ¶¶ 18–20.
[69] ECF No. 121 at 19–20.

interpretations. The Debtor reads the provision to terminate every ORRI claimed by Mr. Turner's estate, because none were "assigned . . . of record."[70] Under the Plaintiffs' interpretation, the provision cuts off only the accrual of new ORRIs after death, leaving earned interests to pass to Mr. Turner's estate.[71] The question then, is whether the Death Provision divests ORRIs a Consultant earned before he died.

The Court finds that it does not. Read with the agreement as a whole, the provision unambiguously limits only future accruals because the word "additional" reaches only interests that would otherwise be earned after death. Further, "assigned…of record" cannot mean the county real property records without rendering the provision null under the Record Title Provision. In any event, the provision does not govern Mr. Turner's earned interests because he retired before he died and his right to their assignment vested under the Retirement Provision at that time. Even if the provision were ambiguous, the Debtor's undisputed course of conduct in the form of continued payment to Mr. Turner after retirement and to Mrs. Turner after his death would compel the same construction. Mr. Turner's entitlement was therefore fixed at his retirement — the full ORRI on wells then producing, and one-half on projects then pending as they came into production before his death — and all of it passes to his estate.

### A. The Death Provision Unambiguously Limits Only Future Accruals.

A contract is constructed as a whole, so as to give effect to every provision and to render none meaningless. *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Coker*, 650 S.W.2d at 393. Two features of the Death Provision, read against the rest of the agreement, are sufficient to settle its meaning.

The first is the word "additional." The Death Provision does not say that no ORRI is payable upon death. Rather, it says that "no

[70] ECF No. 130 ¶¶ 6, 57–61.
[71] ECF No. 131 at 17–18.

*additional* ORRI are payable." Read naturally, the term "additional" refers to ORRIs that would otherwise become payable after the Consultant's death. That is, interests in Prospects that come into production later. An ORRI that was earned, entered into the Debtor's records and paid for months or years before the Consultant died is not an "additional" ORRI. The Debtor's construction gives the word no function, and their brief does not address it.

The second is the phrase "already assigned to Consultant of record." The Debtor reads "of record" to mean the county real property records, so that only an ORRI conveyed by a recorded assignment survives the Consultant's death.[72] However, the Record Title Provision keeps record title in the Debtor "at all times" while it operates the property. Applying the Debtor's construction would then mean that no ORRI could ever be "assigned of record" at any time, and that the exception in the Death Provision could never apply to anyone. A construction that reads a provision out of the contract is not a permissible one. *Seagull*, 207 S.W.3d at 345. Read together with the Record Title Provision, "assigned to Consultant of record" can refer only to the record the agreement contemplates the Debtor keeping. That is, the interests Mr. Shaver allocated to a Consultant, entered in the Debtor's Division of Interest Listings and pay decks, and reported to the taxing authorities in the Consultant's name. Those are the interests "already assigned to Consultant of record," and the provision states that they "pass to the beneficiaries of the Estate of Consultant."

The Debtor's construction would also constitute a forfeiture. It would strip a Consultant's estate of years of earned and paid interests because the Debtor never executed assignments that the agreement itself deferred until a sale of the property or the Consultant's dissociation. Texas courts do not construe a contract to effect a forfeiture unless its language provides for no other reading. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam) ("Forfeitures are not favored in Texas, and contracts are construed to

[72] ECF No. 130 ¶¶ 60–61.

avoid them."); *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 842 (Tex. 2010). That is not the case here.

The Debtor's invocation of the canon that specific provisions control general ones does not offer much support.[73] The canon resolves conflicts between provisions, and there is no conflict here. The Plaintiffs do not argue that death is a form of "other disassociation," and both Parties agree the two provisions address different events.[74] The Retirement Provision governs a living Consultant's separation from the Debtor. It requires assignment of earned producing ORRIs, provides for continued participation in later producing wells, and imposes a duty on the Consultant to characterize and list all wells, which only a living person can perform. The Death Provision governs the accrual of interests after a Consultant dies. Read in this way, each provision has its own field of operation, and neither renders the other superfluous. *Isbell v. DM Records, Inc.* (*In re Isbell Records, Inc.*), 586 F.3d 334,337 (5th. Cir. 2009).

### B. Mr. Turner's Earned ORRIs Vested Under the Retirement Provision Before His Death.

In any event, the Death Provision is not the provision that governs the interests Mr. Turner earned. The record establishes that Mr. Turner retired from his employment with the Debtor in July 2023, around 8 months before he passed.[75] His retirement triggered the Retirement Provision, which requires that "the earned producing ORRI will be assigned to Consultant." From that moment, Mr. Turner held a vested contractual right to the assignment of every earned producing ORRI, meaning the right to legal title that the Opinion held would vest upon the Consultant's disassociation with the Debtor.[76] The Debtor's failure to execute the assignments did not extinguish this right. Equity

[73] ECF No. 130 ¶ 59.
[74] ECF No. 131 at 17.
[75] ECF No. 110-14 at 21.
[76] ECF No. 121 at 33.

regards as done that which ought to be done. *In re Unger & Assocs., Inc.*, 292 B.R. 545,554 (Bankr. E.D. Tex. 2003).

That entitlement had two components. The first sentence of the Retirement Provision assigned to Mr. Turner "the earned producing ORRI . . .on all owned and drilled wells" as of his retirement. The second gave him a continuing participation, at one-half the percentage otherwise payable, in "any pending projects or well(s)" as of that date. This participation ripened well by well as each pending well came into production. The Death Provision then could only perform one function, which was to stop further accrual. Interests that ripened before Mr. Turner's death on March 31, 2024, including the full ORRI on wells producing at his retirement as well as the one-half ORRI on pending wells that began producing between his retirement and his death, were not "additional" ORRIs when Mr. Turner died. They were interests that the agreement had already required to be "assigned to Consultant," and the same defined term describes the interests the Death Provision preserves for the decedent's estate, which are those "already assigned to Consultant." A one-half ORRI on a pending well that first produced after Mr. Turner's death, by contrast, is an "additional" ORRI within the meaning of the Death Provision, and the Plaintiffs do not contend otherwise.[77] Read together, the Retirement Provision fixed the scope of Mr. Turner's participation when he left the Debtor, and the Death Provision closed it off when he died.

Therefore, the Court finds, *only as to Paid ORRIs* per Part I of this opinion, that Mr. Turner's estate holds (i) the full ORRI on every well that was producing and that he worked on as of his retirement, and (ii) one-half of the ORRI percentage otherwise payable on each project or well that was pending as of his retirement and that first produced before March 31, 2024. It holds no interest in a well that first produced

[77] ECF No. 131 at 18 ("[T]he potential for a one-half ORRI on properties which became productive after his death terminates").

after that date or in a project that was neither producing nor pending as of his retirement.

### C. Alternatively, the Parties' Course of Conduct Compels the Same Construction.

Even if it were to be determined that the Death Provision is ambiguous, the outcome would not be changed. Where a contract is ambiguous, extrinsic evidence, including the parties' conduct under the contract before any dispute arose, is admissible to determine its meaning. *Nat'l Union*, 907 S.W.2d at 520-21; *Coker*, 650 S.W.2d at 394. The Parties' conduct here is undisputed and points in one direction.

After Mr. Turner retired, the Debtor kept paying him. After he died it kept paying Mrs. Turner, and it did not stop until it suspended payments to both Plaintiffs in July 2024.[78] The uncontradicted testimony is that those payments were made at the full ORRI on wells producing at retirement and at one-half on wells that began producing between Mr. Turner's retirement and his death, as outlined in the Retirement Provision.[79] However, what matters for present purposes is not the percentage at which the Debtor paid, but rather the fact that it paid at all. For months after Mr. Turner's death, the Debtor treated his earned interests as belonging to his estate. The Debtor offers no testimony that these payments were made in error, no testimony from Mr. Shaver or anyone else that understood a Consultant's earned interests to terminate at death, and no alternative explanation as to why it paid a decedent's widow for months if the contract entitled her to nothing.

The Debtor cites *Nustar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 472 (Tex. App.—Houston [14th Dist.] 2013, pet. dism'd), for the proposition that an ambiguous contract presents a question of fact.[80] That is the general rule, but it does not relieve a party opposing

[78] ECF No. 130 ¶ 8; ECF No. 89-1.
[79] ECF No. 89-1 at 60.
[80] ECF No. 130 ¶ 56.

summary judgment of its burden under Rule 56(c)(1) to identify evidence from which a factfinder could adopt its construction. *Anderson*, 477 U.S. at 249–52. The Debtor has not met this burden. Where the extrinsic evidence is undisputed and supports only one meaning, that meaning may be adopted as a matter of law, and the only meaning this evidence supports is the Plaintiffs'.

The Debtor's further response that "course of conduct and other parol evidence cannot create property interests in land" answers a question the Court did not ask.[81] The cases the Debtor relies on hold that parol evidence cannot supply a property description that the operative instrument lacks. That is the question addressed and resolved in Part I of this opinion. The present question is what the Parties meant by the Death Provision's survivorship terms, which is a question of ordinary contract interpretation for which course of performance is admissible.

Summary judgment on the construction of the Death Provision is granted for the Plaintiffs and denied for the Debtor, and the Debtor's request for a ruling that all of Turner's ORRI claims stop as of the date of his death is denied.

## III. All Other Matters Are Reserved.

The Complaint seeks a declaration as to working interests as well as ORRIs.[82] Neither the cross-motions nor the supplemental briefing addresses working interests, and the Court expresses no view on them. The Court likewise takes no position on whether the Consultants are entitled to a cash bonus arising from the sale of the Debtor's assets; on the Debtor's recovery claim under § 550, which is moot as to the Paid ORRIs and not reached as to others; on the Debtor's objection to the Plaintiffs' proofs of claim, its unjust enrichment claim, or either Party's

---

[81] ECF No. 130 ¶ 62–64 (citing *Fears v. Tex. Bank*, 247 S.W.3d 729, 736 (Tex. App.—Texarkana 2008, pet. denied); *Mayor v. Garcia*, 104 S.W.3d 274, 278 (Tex. App.—Texarkana 2003, dism'd w.o.j.); *Olson v. Bayland Publ'g, Inc.*, 781 S.W.2d 659, 662 (Tex. App.—Houston [1st Dist.] 1989, writ denied).

[82] ECF No. 1.

request for attorney's fees; or on the disposition of the production revenues escrowed under the Court's order issued on December 4, 2025.[83] Each of these matters is reserved pending entry of judgment on the ownership of the Paid ORRIs.

## CONCLUSION[84]

For the foregoing reasons, the Court grants in part and denies in part both parties' motions for summary judgment.

Within 21 days after entry of this supplemental opinion, the Parties shall confer and file a joint schedule of every ORRI claimed by either Plaintiff. For each interest, the schedule shall state: (i) the well or lease and the county in which it is located; (ii) the Consultant to whom the interest was allocated; (iii) the percentage claimed; (iv) the date production revenues were first paid on the interest, if any; (v) the evidence that interest was reported to the county appraisal district in the Plaintiff's name; (vi) whether the well was producing, pending, or neither as of Mr. Turner's retirement, and whether it was producing as of his death; (vii) for each interest claimed by Mr. Turner's estate, the decimal interest the Debtor carried for Mr. Turner on that well in its ownership records and whether, in each Party's view, that decimal reflects the full participation or the one-half participation under the Retirement Provision; and (viii) whether the Parties agree that the interest is or is not a Paid ORRI and, if they disagree, each Party's position with citations to the record. The Debtor shall produce to the Plaintiffs, within 14 days, the ownership spreadsheets and decimal interest records from which the pay decks for the scheduled wells were generated. The Plaintiffs may supplement the record with the complete county tax records within the same period.

Disputed entries will be resolved at an evidentiary hearing to be set by separate order. Following resolution of the schedule, the

[83] ECF No. 80.

[84] This Supplemental Memorandum Opinion, together with the Opinion, constitutes the findings of fact and law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Plaintiffs shall submit a proposed form of judgment consistent with the Opinion and this supplemental opinion.

SIGNED 10/14/2026

Alfredo R Pérez
United States Bankruptcy Judge